1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  Constance MELKONIAN,          )  Civil No. 06cv2081-JLS (BLM)
                                  )
12                   Plaintiff,   )  **REPORT AND RECOMMENDATION FOR**
                                  )  **ORDER DENYING PLAINTIFF'S**
13  v.                            )  **MOTION AND GRANTING**
                                  )  **DEFENDANT'S CROSS-MOTION FOR**
14  Michael J. ASTRUE, Commissioner )  **SUMMARY JUDGMENT**
    of Social Security,           )
15                                )
                     Defendant.   )
16  _____ )

17        Constance Melkonian brought this action for judicial review

18  of the Social Security Commissioner's ("Commissioner") denial of her

19  claim for disability insurance benefits.   Before the Court are

20  Plaintiff's Motion for Summary Judgment (Doc. No. 35, "Pl. Mot."),

21  and Defendant's Cross-Motion for Summary Judgment (Doc. Nos. 57 &

22  57-2, "Def. Mot.").

23        These motions were referred to the Honorable Barbara L. Major

24  for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and

25  Federal Rule of Civil Procedure 72(b).   Doc. No. 49.   For the

26  reasons set forth below, this Court **RECOMMENDS** that Plaintiff's

27  motion be **DENIED** and Defendant's cross-motion be **GRANTED**.

28  ///

### PROCEDURAL BACKGROUND

Plaintiff was born on May 28, 1986, with a heart defect that caused oxygen-poor blood to circulate through her body. Administrative Record ("AR") at 112. Three years later, the Social Security Administration ("SSA") granted Plaintiff childhood Supplemental Security Income ("SSI") benefits, with a retroactive onset date of her birthday. Id. at 116. In 1998, the SSA notified Plaintiff that her case would be reconsidered pursuant to 20 C.F.R. § 416.994a(a), which requires periodic review to determine whether disability benefits should continue. Id. at 1036. On June 10, 1999 the SSA informed Plaintiff that she no longer was eligible for SSI, due to insufficient evidence to determine her disability status, and Plaintiff's failure to appear at a consultive examination with SSA doctors. Id. at 117. Plaintiff's parents made several requests for reconsideration (id. at 122-30, 166-67, 170-76, 180-86), and ultimately received a continuation of SSI benefits through September 1, 2003 (id. at 208).

Plaintiff objected to the 2003 termination of her childhood SSI benefits, and requested a hearing before an Administrative Law Judge ("ALJ"). AR at 371-75. Because Plaintiff had turned eighteen years old earlier that year, she also asked the ALJ to award her adult SSI benefits. Id. ALJ Edward Steinman held the hearing on February 1, 2005, and shortly thereafter issued separate orders denying Plaintiff's requests. Id. at 86-98, 102-111. The ALJ determined that Plaintiff's childhood benefits were properly terminated because Plaintiff's medical condition had improved significantly. Id. at 86-98. The ALJ also rejected Plaintiff's request for adult benefits on several grounds relating to the

1   conclusion that her medical problems did not prevent her from

2   working.  Id. at 102-111.

3         Plaintiff sought review of these holdings (id. at 81-82), and

4   submitted additional medical evidence in support of her arguments,

5   including reports from Dr. Mark Plunkett, written in March and July

6   of 2006 (id. at 8-61).  On May 25, 2006, after considering the new

7   evidence, the Appeals Council upheld the ALJ's holdings, thus

8   finalizing the SSA's decisions.  Id. at 73-80.

9         Plaintiff filed a complaint in district court challenging,

10  inter alia, the ALJ's decisions, and naming the U.S. Government as

11  the defendant.  Doc. No. 1.  After the district judge dismissed the

12  complaint for failure to name the proper defendant (Doc. No. 3),

13  Plaintiff filed the currently-operative first amended complaint

14  (Doc. No. 4, "FAC").  In the FAC, Plaintiff alleges wrongful conduct

15  by numerous actors, including the SSA and the ALJ, in violation of

16  the U.S. Constitution and several federal civil rights statutes.

17  Id.  Plaintiff also argues that the ALJ erred in denying her

18  childhood and adult SSI benefits.    Id.  Pursuant to the above

19  claims, Plaintiff seeks (1) interim mandamus relief for all SSI

20  benefit claims, (2) injunctive, declaratory, and mandamus relief for

21  the payment of $3,000,000, and (3) reimbursement of all medical

22  costs and expenses rendered over her lifetime.   Id.

23        Defendant moved to dismiss Plaintiff's FAC.  Doc. No. 11.  In

24  June 2007, the district judge granted in part Defendant's motion,

25  and dismissed Plaintiff's constitutional and civil rights claims.

26  Doc. No. 22.  Pursuant to this order, Plaintiff's only remaining

27  claims are those for judicial review of the Commissioner's final

28  decisions affirming the 2003 cessation of childhood SSI benefits and

1   denying adult SSI benefits.        Id. (stating that "Plaintiff's

2   exclusive remedy for challenging the SSA's denial of her SSI

3   benefits and cessation of her SSI benefits is the review procedure

4   set forth in 42 U.S.C. § 405(g)").

5        Plaintiff appealed the district court's order (Doc. No. 33),

6   and the Ninth Circuit dismissed the appeal for lack of jurisdiction

7   (Doc. No. 48).   Currently before the Court are the parties' cross-

8   motions for summary judgment and Plaintiff's reply in opposition to

9   Defendant's cross-motion for summary judgment.

10                        **FACTUAL BACKGROUND**

11  **A.      Plaintiff's Medical History**

12       Plaintiff, who is now twenty-two years old, was born in 1986

13  with Tetralogy of Fallot, a heart defect which results in oxygen-

14  poor blood being pumped into the body.[1]   AR at 116.   Plaintiff's

15  condition was life-threatening at birth and, shortly after Plaintiff

16  was born, surgeons placed a prosthetic valve in her heart to

17  increase oxygen flow to her lungs.   Id. at 247.   Less than one year

18  later, Dr. John Lamberti installed another valve.   Id. at 259.   In

19  May 1989, Dr. Lamberti reported that though the post-operative

20  course was "quite stormy," "complete repair of the Tetralogy of

21  Fallot was accomplished."   Id. at 267.   The following month, the SSA

22  held that Plaintiff's heart condition qualified her for childhood

23  SSI benefits, retroactive to her date of birth.   Id. at 116.

24       Because Plaintiff experienced tachycardia, an overly-rapid

25  ///

26  ///

27  _____

28       [1]   American   Heart   Association,   Tetralogy   of   Fallot,
    http://www.americanheart.org/presenter.jhtml?identifier=11071 (last visited July
    17, 2008).

heart rate,[2] she visited Dr. John Perry, a pediatric cardiologist, for assessment.  Id. at 304.   Dr. Perry determined that the tachycardia could be eliminated with a minor procedure and, on March 4, 1997, he performed a right heart catheterization, with "excellent result[s]." Id. at 304. Dr. Perry also reported that Plaintiff had "done beautifully" since her previous surgeries.  Id.

In 1996, Plaintiff developed scoliosis as a collateral effect of her heart defect.  Id. at 282.  Dr. John Hall recommended a corrective spinal fusion (id.), and performed the surgery on May 9, 1997 (id. at 278).  Follow-up x-rays taken one year later showed that Plaintiff's condition "remained excellent" and that there was "no longer any need to restrict her activity and she should be allowed to do whatever she can." Id. at 287.

On July 27, 1999, cardiologist Dr. Kathleen Maginot examined Plaintiff, who was then thirteen years old.  Id. at 328-30.  Dr. Maginot reported that Plaintiff "appear[ed] to be doing extremely well clinically," and noted that she was not taking any medications. Id. at 330.  Dr. Maginot reported that Plaintiff had "no specific restrictions on her activity level," and had attended summer camp on Catalina Island and been snorkeling.  Id. at 328-29.  Plaintiff's parents also told Dr. Maginot that Plaintiff "had been entirely asympotomatic with no history of chest pain, syncope [dizziness], palpitations, or exercise intolerance." Id. at 328.

In July 1999, pediatrician Dr. Janna Cataldo informed Plaintiff's middle school that Plaintiff should follow a "modified physical education program" which permitted her to run a maximum of

_____

[2] Mayo Clinic, Tachycardia, http://www.mayoclinic.com/health/tachycardia/DS00929 (last visited July 17, 2008).

1   400 yards a day, power walk, perform warm-up exercises, and

2   participate in "all other activities allowed, such as basketball,

3   racquetball, volleyball, soccer, et cetera, at her own pace." Id.

4   at 300.   In June 2003, Dr. Perry examined Plaintiff and reported

5   that she was doing great and reporting no symptoms. Id. at 468.

6         Several months later, in December 2003, Plaintiff had a flu-

7   like illness and lost consciousness during the night. Id. at 465.

8   While Plaintiff's father found her unconscious on the floor,

9   Plaintiff quickly recovered consciousness, and the whole episode

10  lasted "much less than a minute." Id. Plaintiff was taken to the

11  emergency room and, after a cardiology consultation, blood chemistry

12  profile, and chest x-rays, a doctor diagnosed Plaintiff as having

13  fainted.[3] Id. at 459.   Plaintiff received a minor laceration on her

14  head as a result of the fall. Id. at 460.

15        Dr. Perry examined Plaintiff six months later and reviewed

16  the fainting episode. Id. at 465-66.   He characterized the post-

17  faint emergency room assessment as "unremarkable," stated that

18  Plaintiff was doing "very, very well," and found that she had "no

19  worrisome [cardiac] rhythm abnormalities." Id. Dr. Perry neither

20  stated nor implied that the fainting episode gave cause to limit

21  Plaintiff's activity in any way.   Id. Dr. Perry also opined that

22  Plaintiff would not need to replace the surgically-implanted shunt

23  in her heart for "many, many years." Id. at 467.

24  ///

25

26        [3] A doctor described the incident as a "vasovagal event." AR at 465. As
    stated by the ALJ, "[i]n other words, the claimant fainted from the flu." Id.
27  at 108; See also American Heart Association, Syncope,
    http://www.americanheart.org/presenter.jhtml?identifier=4749 (last visited July
28  17, 2008) (defining a vasovagal event as a "benign" loss of blood pressure, and
    the most frequent cause of fainting, particularly amongst children and young
    adults).

1    **B.**        **<u>The Administrative Hearing</u>**

2         The ALJ heard Plaintiff's case on February 1, 2005.  AR at

3    86.  Because Plaintiff was a full-time university student in another

4    city, she was unable to appear at the hearing.  <u>Id.</u> at 86, 1956.

5    The ALJ declared Plaintiff a non-essential witness and she was

6    represented by her father.  <u>Id.</u> at 1954.  Although, prior to the

7    hearing, the SSA requested a full history of Plaintiff's medical

8    history for use at the hearing, Plaintiff did not submit any

9    documents pertinent to her condition after March 2000.  <u>Id.</u> at 1957.

10   Plaintiff's father did, however, submit additional evidence during

11   the hearing.  <u>Id.</u> 1957-75.

12        Plaintiff's father testified regarding Plaintiff's December

13   2003 faint.  <u>Id.</u> at 1961.  He stated that this was the third or

14   fourth such episode in her lifetime and opined that the fainting

15   spells resulted from tachycardia.  <u>Id.</u> at 1961, 1966.  Referring to

16   unspecified doctor's reports, Plaintiff's father also testified that

17   Plaintiff needed a replacement heart valve when she turned sixteen

18   or seventeen years old.  <u>Id.</u> at 1971.

19        After hearing Plaintiff's father's testimony, the ALJ

20   examined a vocational expert ("VE") regarding the nature and

21   availability of employment that Plaintiff could perform.  <u>Id.</u> at

22   1972-75.  The VE testified that given Plaintiff's age, lack of

23   employment history, education, and medical history, and assuming she

24   could perform light or medium work, there were approximately 3,000

25   jobs locally and almost one million nationally that Plaintiff could

26   perform.  <u>Id.</u>

27        Specifically, the VE testified that Plaintiff could perform

28   medium work as a general laborer, with 1,500 positions available in

1    the county, and over 280,000 nationally.  Id. at 1972; see also 20

2    C.F.R. §§ 404.1567 & 416.967 (defining grades of work in terms of

3    effort required of an employee, where "medium" work can require

4    lifting up to fifty pounds at a time, and frequent lifting and

5    carrying of objects up to twenty-five pounds). She also testified

6    that Plaintiff could perform light work as a production assembler,

7    with 1,000 positions available in the county, and over 680,000

8    nationally.  AR at 1973.  Finally, the VE testified that Plaintiff

9    could perform sedentary work as a production inspector, with 500

10   positions available in the county, and about 75,000 positions

11   nationally.  Id.  The VE's testimony only referred to Plaintiff's

12   ability to work as an adult, and did not bear on her childhood SSI

13   claim.  Id. at 1978.

14        On June 18, 2005, the ALJ issued two separate decisions.  Id.

15   at 89-98, 102-111.  The first upheld the 1999[4] cessation of childhood

16   SSI benefits (id. at 89-98), and the second held that Plaintiff was

17   not entitled to adult SSI benefits (id. at 102-11).

18                          **STANDARD OF REVIEW**

19        Section 405(g) of the Social Security Act allows unsuccessful

20   applicants to seek judicial review of the Social Security

21   Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of

22   judicial review is limited.  The Commissioner's denial of benefits

23   will not be disturbed if it is supported by substantial evidence and

24   contains no legal error.  Id.; Batson v. Comm'r Soc. Sec. Admin.,

25   359 F.3d 1190, 1193 (9th Cir. 2004).

26

27   _____

28        [4] As stated above, in 1999 Plaintiff was found to be no longer eligible for
     childhood SSI benefits.  AR at 117.  Although the SSA ultimately continued
     childhood benefits until 2003 (id. at 208), for the sake of consistency this
     Court refers to the cessation of childhood benefits as the "1999 cessation."

1    Substantial evidence is "more than a mere scintilla but may

2    be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509

3    (9th Cir. 2001) (citation omitted).  It is "relevant evidence that,

4    considering the entire record, a reasonable person might accept as

5    adequate to support a conclusion." Id. (citation omitted); see

6    also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.

7    2003).  Where the evidence can reasonably be construed to support

8    more than one rational interpretation, the court must uphold the

9    ALJ's decision.  Batson, 359 F.3d at 1193.  This includes deferring

10   to the ALJ's credibility determinations and resolutions of

11   evidentiary conflicts.  See Lewis, 236 F.3d at 509.

12   Even if the reviewing court finds that substantial evidence

13   supports the ALJ's conclusions, the court must set aside the

14   decision if the ALJ failed to apply the proper legal standards in

15   weighing the evidence and reaching his or her decision.  See Batson,

16   359 F.3d at 1193.  When a federal court reviews the ALJ's decisions,

17   the above standards apply equally whether those decisions concern

18   childhood or adult SSI benefits.  Warre v. Commissioner of Social

19   Sec. Admin., 439 F.3d 1001, 1004-09 (9th Cir. 2006) (applying adult

20   SSI standards of review to consideration of childhood SSI denial).

21   Section 405(g) permits a court to enter a judgment affirming,

22   modifying, or reversing the Commissioner's decision.  42 U.S.C. §

23   405(g).  The reviewing court may also remand the matter to the SSA

24   for further proceedings. Id.

25   **DISCUSSION**

26   Plaintiff seeks reversal of the ALJ's decisions, an immediate

27   award of SSI benefits, and damages.  Pl. Mot; Reply at 24, 42-47.

28   She specifically requests that the case not be remanded to the ALJ.

1   <u>Id.</u> at 24.  Construing Plaintiff's arguments broadly, she appears to

2   contend that the ALJ's denials of benefits were improper because

3   (1) neither was based on "substantial evidence" (<u>see</u> Pl. Mot. at 1-

4   2; Reply at 3-4, 10, 12, 15-16, 25), (2) evidence submitted after

5   the 2005 administrative hearing undermined the ALJ's holdings (Reply

6   at 14, 17-18, 22), and (3) the SSA lied about Plaintiff's failure to

7   appear at a consultive exam (Pl. Mot. at 1-2; Reply at 5).

8        Defendant argues that the Commissioner's decisions were

9   supported by substantial evidence and were proper as a matter of

10  law.  Def. Mot.  Therefore, Defendant argues, Plaintiff's remaining

11  claims should be dismissed.  <u>Id.</u>

12  **A.    <u>Substantial Evidence</u>**

13       Plaintiff contends that there was insufficient evidence

14  supporting either denial of benefits because a treating physician,

15  Dr. Mark Plunkett, determined in 2006 that Plaintiff had a life-

16  threatening condition that required surgery, and then performed the

17  requisite surgery.  Reply at 14, 16-18.  Plaintiff also argues that

18  the ALJ improperly relied on SSA officer Mary Murillo's

19  determination that Plaintiff was not disabled.  Pl. Mot. at 1-2;

20  Reply at 3-4, 15-16, 25.  To address Plaintiff's arguments, the

21  Court will evaluate the sufficiency of the evidence supporting both

22  of the ALJ's decisions and the specific deficiencies asserted by

23  Plaintiff.

24       1.   <u>Childhood Disability</u>

25       The ALJ held that Plaintiff was no longer under a

26  "disability" as defined in the Social Security Act, and that the

27  SSA's 1999 cessation of her childhood disability benefits was

28  therefore proper.  AR at 86-98.  As required by 20 C.F.R. § 416.924,

1   this determination was made after a three-step evaluation of
2   Plaintiff's impairments and ability to work.

3              a.   Step One of the Childhood Disability Analysis

4        Under the first step of the evaluation, a claimant will be
5   determined not disabled if she has performed substantial gainful
6   work.  20 C.F.R. § 416.924(b).  If she has, she is not disabled.
7   Id.  As the record reflected no work history, the ALJ properly
8   determined that Plaintiff had never been gainfully employed.  AR at
9   90.

10             b.   Step Two of the Childhood Disability Analysis

11       Under the second step of the evaluation, a child is not
12  disabled if she only suffers from minimal functional limitations
13  which do not rise to the level of severe impairments.  20 C.F.R.
14  § 416.924(c).  The ALJ determined that Plaintiff had scoliosis and
15  Tetralogy of Fallot, but that surgical repair of both reduced them
16  to the level of minimal functional limitations.  AR at 91.

17       In support of his conclusion that Plaintiff's scoliosis was
18  a minimal impairment, the ALJ cited Dr. Hall, who had performed the
19  spinal fusion to correct the problem.   Id.  One month after the
20  surgery, Dr. Hall stated that Plaintiff's fusion was "solid," that
21  correction of her scoliosis remained "excellent," and that "there is
22  no longer any need to restrict her activity and she should be
23  allowed [to] do whatever she can."  Id. at 287.

24       In support of his finding that Plaintiff's Tetralogy of
25  Fallot was not a severe impairment, the ALJ cited the opinion of Dr.
26  Janna Cataldo.  Id. at 91.  In 1999, Dr. Cataldo sent a letter to
27  Plaintiff's middle school, stating that Plaintiff could run 440
28  yards daily, power walk, and, at her own pace, participate in warm-

1  up exercises and all other activities, such as basketball,

2  volleyball, and soccer.  Id. 300.  The ALJ also cited Dr. Maginot's

3  1999 statements that Plaintiff had attended camp on Catalina island,

4  snorkeled, and participated in other activities (id. at 91, 328-29),

5  and Plaintiff's eighth-grade teacher's statement that Plaintiff had

6  no difficulty standing, walking or running.  Id. at 91.

7              c. Step 3 of the Childhood Disability Analysis

8          The third and final step of the childhood disability

9  evaluation requires the ALJ to assess whether the child's

10  impairments meet a statutorily-listed impairment or, if not, whether

11  they "functionally equal" a listing.  20 C.F.R. § 416.924(d).  If

12  not, the claimant is not disabled.  Id.  Plaintiff claimed that she

13  suffered from persistent tachycardia at rest, other recurrent

14  arrhythmias, and persistent chronic hypoxemia.  The ALJ determined

15  that these claims were not supported by the record.[5]  AR at 92.

16          For a claimant to be "disabled" by tachycardia (elevated

17  heart rate), the tachycardia must be "persistent ... such that a

18  pattern of continuing severity is established."  Disability

19  Evaluation Under Social Security ("Disability Evaluation")

20  § 104.00(A)(3)(b).  In 1997, Dr. Perry stated that Plaintiff had

21  "rare" episodes of tachycardia, "perhaps once per year."  AR at 306.

22  Subsequently, Dr. Perry performed a right heart catheterization with

23  "excellent results," thereby resolving the problem.  Id. at 304; see

24  also id. at 465 (Dr. Perry's 2004 statement that Plaintiff "has not

25  had any recurrent arrhythmia since her ablation in 1997"); id. at

26  332 (Dr. Maginot's 1999 diagnosis that recurrence of tachycardia is

27

28  _____
      [5] After the hearing, Plaintiff submitted new evidence of arrhythmia to the
      Appeals Council.  As discussed infra at 20-26, this new evidence does not
      undermine the ALJ's holdings, such that reversal or remand is required.

1   "unlikely").   The ALJ held that Plaintiff's "rare" episodes of

2   tachycardia, which were repaired by surgery eight years before the

3   administrative hearing, did not qualify as "persistent" or "severe."

4       The ALJ also stated that Plaintiff did not suffer from

5   "recurrent arrhythmia" (arrhythmic heart beats).   Id. at 88.   To

6   qualify as a listed impairment, recurrent arrhythmia must result in

7   cardio-related syncopal (fainting) episodes at least three times

8   within a consecutive 12-month period.   Disability Evaluation

9   §§ 104.00(A)(3)(c) & 104(E)(3)(a).   Here, not only does the record

10  reflect only two syncopal episodes, one in 2001 and the other in

11  2003, but there is evidence that the latter event was not heart-

12  related, but, rather, a result of the flu.   AR at 465.

13      The ALJ also held that Plaintiff did not meet the listed

14  impairment of persistent chronic hypoxemia (low blood oxygen).   This

15  holding is supported by reports from heart specialists stating,

16  among other things, that Plaintiff's blood chemistry profile is

17  normal (id. at 459), that her health is "excellent" (id. at 287),

18  that she can exercise without restriction (id. at 328-29), and that

19  "she is doing well clinically" (id. at 912).

20      Because Plaintiff's conditions did not meet any of the listed

21  impairments, the ALJ was required to assess whether her impairments

22  "functionally equaled" the listings.   20 C.F.R. § 416.924.   As

23  prescribed by statute, this is done by determining how the child

24  performs in six "domains of functioning."   Id. at § 416.926(a)(b).

25  A child must have "extreme" functional limitations in one domain or

26  "marked" limitations in at least two domains to be found disabled.

27  Id.   These domains are: acquiring and using information, attending

28  and completing tasks, interacting and relating with others, moving

about and manipulating objects, caring for yourself, and health and physical well-being.  <u>See</u> 20 C.F.R. § 416.926a(b)(1).

After four pages of in-depth analysis, the ALJ concluded that Plaintiff had no limitations in any of the domains.  AR at 93-97.  The ALJ's opinion was based on numerous citations to the opinions of Plaintiff's teachers and doctors, evidence that Plaintiff was socially adept and performed well in school, and that she participated in a full range of activities, such as snorkeling and art classes.  <u>Id.</u>

At each step of the childhood disability evaluation, the ALJ provided "relevant evidence that, considering the entire record, a reasonable person might accept as adequate" to support his conclusion that Plaintiff's childhood disability benefits were properly terminated.  <u>Lewis</u>, 236 F.3d at 509; <u>Warre</u>, 439 F.3d at 1004-00 (applying adult SSI standards of review to consideration of childhood SSI denial).  The ALJ "summarized the facts and [] medical evidence in a detailed and thorough fashion, stating his interpretation and making findings," and his conclusions were therefore based on substantial evidence.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989).  This Court's independent review of the record confirms the validity of the ALJ's conclusions.

2.  <u>Adult Disability</u>

The ALJ also held that Plaintiff was not a "disabled" adult, such that she was entitled to SSI benefits (AR at 102-11); a ruling that Plaintiff contends was not based on substantial evidence (Pl. Mot; Reply).  Pursuant to the Social Security Regulations ("Regulations"), the ALJ followed a five-step sequential evaluation process for determining Plaintiff's disability.  <u>Id.</u>; 20 C.F.R.

1   § 416.920(a) (describing five-step evaluation).

2        At the first step, the ALJ determined that Plaintiff had

3   never engaged in substantial gainful activity.  AR at 103-04; 20

4   C.F.R. § 416.920(a)(4)(I) (first step of sequential disability

5   evaluation).  This finding is not contested.

6        At the second step, the ALJ was required to determine whether

7   Plaintiff had a medically determinable impairment, or combination of

8   impairments, considered "severe" under the Social Security Act.  20

9   C.F.R. § 416.920(a)(4)(ii).  The ALJ found that Plaintiff's

10  Tetalogy of Fallot and scoliosis were not "severe" because both

11  ailments had been surgically repaired.  AR at 105.  This finding was

12  thoroughly supported by the medical evidence already discussed

13  above, including records of Plaintiff's successful corrective

14  surgeries, her excellent recoveries and ability to engage in a full

15  range of activity, and positive prognoses for the future.  Id. at

16  104-05.

17       Although the ALJ already had determined that Plaintiff did

18  not suffer from a severe impairment, and therefore was not disabled,

19  he continued the analysis to give Plaintiff "every benefit of the

20  doubt."  Id. at 105.  At the third step of the disability

21  assessment, the ALJ asked whether Plaintiff's impairments met or

22  equaled a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).  For

23  the reasons discussed above, supra at 12-13, the ALJ found that the

24  record failed to support Plaintiff's allegations of disabling

25  cyanosis, arrhythmia, syncope, or congenital heart disease.  AR at

26  105.  Based on Dr. Hall's post-surgery conclusions that Plaintiff

27  had no restrictions on her activities, the ALJ also found that

28  Plaintiff's corrected scoliosis did not constitute a listed

1  disability.  Id. at 105, 107.

2       At the fourth step of the disability assessment, the ALJ

3  determined that Plaintiff possessed the "residual functional

4  capacity" ("RFC") to perform a significant range of medium work.

5  Id. at 106-10; 20 C.F.R. § 416.920(a)(4)(iv).  In reaching this

6  conclusion, the ALJ cited evidence that Plaintiff's heart defects

7  and scoliosis had been repaired by surgery, and doctors' opinions

8  that she was "looking absolutely great" and "doing very, very well".

9  Id. at 106.  He noted that Plaintiff was not taking any cardiac

10 medications[6], and cited Dr. Hall's conclusion that there was no

11 reason to restrict her activities.  Id.  The ALJ also cited evidence

12 of Plaintiff's participation in a normal range of activities,

13 including basketball and camping, and her status as a full-time

14 college student with a 3.325 grade point average.  Id.

15      At the fifth and final step of the disability determination,

16 the ALJ assessed whether work existed in the national economy that,

17 given her RFC, Plaintiff could perform.  20 C.F.R.

18 § 416.920(a)(4)(v).  Based on the VE's testimony, discussed supra at

19 7-8, the ALJ held that Plaintiff could work as a production

20 inspector, production assembler, or general laborer, and that

21 hundreds of thousands of such positions existed in the nation.  AR

22 at 110.

23      As thoroughly described by the ALJ, the overwhelming weight

24 of the evidence supports the conclusion that Plaintiff is not a

25 disabled adult.  "The ALJ summarized the claimant's background,

26 subjective complaints, and medical evaluations," and, based on this

27 ————————————

28      [6] Plaintiff was on antibiotics to prevent infection, but this was merely
   prophylactic.  AR at 468.

information, properly found her to be not disabled.  <u>Seang Wang v.</u>
<u>Astrue</u>, 252 Fed. Appx. 844, 846 (9th Cir. 2007).  In reaching this
conclusion, the ALJ provided more than twenty-five citations to a
longitudinal cross-section of people who were most familiar with
Plaintiff and her abilities, including physicians, parents, and
teachers. AR at 102-11.  These citations constitute    "relevant
evidence that, considering the entire record, a reasonable person
might accept as adequate to support a conclusion." <u>Lewis</u>, 236 F.3d
at 509; <u>see</u> <u>also</u> 20 C.F.R. § 416.920 (burden is on claimant to prove
disability).  The ALJ's opinion was thus supported by substantial
evidence.

        3.    <u>Plaintiff's Argument That the ALJ Improperly Relied on</u>
             <u>the 1999 Determination That Plaintiff Was Not Disabled</u>

     Plaintiff contends that the ALJ's decision is improperly
founded on a 1999 determination that Plaintiff was not disabled.
Reply at 3-4, 15-16, 25; Pl. Mot. at 1-2.  On June 10, 1999, the SSA
mailed Plaintiff a letter stating that her childhood disability
benefits would cease on August 1, 1999.  AR at 121.  Plaintiff's
parents requested reconsideration of the cessation, and a
reconsideration hearing was held on March 14, 2000.  <u>Id.</u> at 141.
The SSA hearing officer, Mary Murillo, subsequently issued a
decision affirming the cessation.  <u>Id.</u> at 141-52.  Citing more than
one dozen doctor's reports, Ms. Murillo held that Plaintiff's health
had improved such that she was no longer a "disabled child" by SSA
standards and that she was therefore no longer eligible for SSI
benefits. <u>Id.</u> at 141-52.

     Plaintiff argues that Ms. Murillo's conclusion is a "lie,"
and contends that because the ALJ relied on Ms. Murillo's report,

1   his opinion was not based on "substantial evidence."  Reply at 15;

2   see also id. at 3-4, 16, 25; Pl. Mot. at 1-2.  Plaintiff argues that

3   Ms. Murillo's finding of not disabled was false because Plaintiff

4   was "in desperate need of a life saving open heart surgery with her

5   designated Surgeon, Denton A. Cooley scheduled for October 1, 1999."

6   Pl. Mot. at 2; Reply at 5.   In support, Plaintiff provided an

7   October 1, 1999 letter from Dr. Cooley.  Pl. Mot. at 2; Reply at 15.

8        Plaintiff's argument is unavailing for a number of reasons.

9   First, although the ALJ supported his holdings with citations to

10  numerous sources, he *never once* cited Ms. Murillo's report as a

11  foundation for his opinions.  In fact, part of Plaintiff's purpose

12  in bringing the case before the ALJ was to appeal Ms. Murillo's

13  holding.  AR at 86 (ALJ's statement that "[t]his case is before the

14  Administrative Law Judge upon a request for hearing  filed ... by

15  Garo Melkonian, the claimant's father, who is dissatisfied with the

16  April 20, 2000 Notice of Reconsideration").   Because he was

17  reviewing Ms. Murillo's decision, the ALJ quite properly did not

18  rely on Ms. Murillo's statements in reaching his conclusion that

19  Plaintiff's childhood medical condition had improved.  Id. at 86-98.

20  Although the ALJ ultimately reached the same conclusion as Ms.

21  Murillo, he did so without support from her opinion.  Plaintiff's

22  statements to the contrary find no support in the record and

23  therefore are unpersuasive.

24        Second, the letter from Dr. Cooley that Plaintiff cites in

25  support of her allegation that Ms. Murillo lied is insufficient to

26  support Plaintiff's arguments.  Dr. Cooley's letter merely states:

27        Constance V. Melkonian is a 13 year old girl from La
          Jolla, California with congenital heart disease who
28        has undergone several surgeries for this condition.

> Our office was contacted by her parents about her
> condition, and she has an appointment to see Dr.
> Denton Cooley ... and Dr. Roberto Luischanowski ...
> at the Texas Heart Institute, on December 20, 1999,
> 2:00 p.m.

AR at 892.  This letter establishes nothing more than the fact that Plaintiff had an appointment to see Dr. Cooley, and in no way indicates that she was on the cusp of a medical emergency, in need of a life-saving operation, or that such an operation was scheduled for October 1, 1999.  Id.

Third, the record as a whole does not support Plaintiff's contentions that Ms. Murillo "lied" in her report, or offered "perjured evidence and willful misrepresentation[s]." Pl. Mot. at 1-2.  Ms. Murillo's conclusion that Plaintiff's medical condition had improved was well supported by citation to several medical reports written by Plaintiff's treating doctors.  AR at 145-47. These reports include statements that Plaintiff's condition was "stable," that "she appears to be doing extremely well clinically," and that both her heart and spinal surgeries were successful.  Id.

For the above reasons, Plaintiff's arguments that the ALJ's disability finding was false, improperly based on Ms. Murillo's report, or compromised by Dr. Cooley's letter are not persuasive. Because they fail to show that the ALJ's opinion was not based on substantial evidence, or that he applied an improper legal standard, this Court sees no reason to disturb the ALJ's holding on these grounds.  See Batson, 359 F.3d at 1193 (ALJ's opinion will only be disturbed when not founded on substantial evidence, or when based on legal error).

///

///

4.    Arguments Based on Evidence Acquired After the 2005
      Administrative Hearing

Plaintiff also argues that she is entitled to SSI benefits because in 2006 she experienced an episode of cardiac arrhythmia and because she required surgery in 2006 to replace her prosthetic heart valve. Reply at 14, 16-18 (surgery) and _id._ at 4, 18-19, 22 (arrhythmia). These arguments are based on thirty-four pages of newly-submitted medical evidence. AR at 8-61; Pl. Mtn. at 33-67 (duplicating evidence submitted in record). All of this evidence was created after the February 1, 2005 disability hearing, and was therefore not presented to the ALJ. _Id._ However, the Appeals Council considered this information (AR at 8-61), and the evidence is thus properly before this Court. See Bates v. Sullivan, 894 F.2d 1059, 1064 (new evidence presented to Appeals Council incorporated into record); 20 C.F.R. § 404.970 (applicant may present new evidence to appeals council).

a.    Dr. Plunkett's Opinions and Plaintiff's Need for
      Surgery in 2006

Plaintiff argues that the Commissioner failed to give sufficient weight to the opinions of Plaintiff's treating physicians and, specifically, to the statements of Dr. Mark Plunkett. Reply at 14, 16-18.[7] Plaintiff states that Dr. Plunkett found Plaintiff's

---

[7] Although Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's treating physicians in general, she cites only the opinions of Dr. Plunkett when making this argument. Reply at 14, 16-18. Therefore, in this section of the discussion, the Court only addresses Plaintiff's argument in regards to Dr. Plunkett. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (when considering motion for summary judgment, court need not consider evidence not "specifically referred to" in motion papers). However, the Court notes that, as emphasized throughout this Report and Recommendation, and contrary to Plaintiff's allegations, the record as a whole indicates that the ALJ did in fact give sufficient weight to Plaintiff's treating physicians.

1  heart condition to be "severe, gross, compelling and potentially
2  life threatening," and that because Dr. Plunkett is a "treating
3  surgeon", "a finding of disability is mandatory without additional
4  inquiry." Id. at 14.

5      The record contains three documents written by Dr. Plunkett.
6  The first, dated March 17, 2006, is a report evaluating Plaintiff's
7  need for surgical replacement of the artificial heart valve
8  implanted when she was a child. AR at 42-44. In this report, Dr.
9  Plunkett concluded that surgery was necessary in the "near future"
10 because Plaintiff was at "significant risk for rupture or dissection
11 of her aortic root and ascending aorta," which would be a "sudden
12 and likely fatal event." Id. at 44. Dr. Plunkett's second report
13 is a brief letter dated July 2, 2006, that reiterates Plaintiff's
14 need for surgery. Id. at 41. Dr. Plunkett's third report, written
15 July 16, 2006, describes the valve replacement surgery he performed,
16 and concludes that Plaintiff "tolerated the procedure well" and
17 there were "no complications." Id. at 38-39. The following month,
18 Dr. Neil Siecke noted the presence of Plaintiff's new prosthetic
19 valve and stated that it "appear[ed] to be well seated with normal
20 leaflet/disc motion." Id. at 32. At no point does the new evidence
21 from Dr. Plunkett state that Plaintiff is limited in her physical
22 activity or ability to work. Id. at 38-39, 41-44.

23     Plaintiff argues that the fact that she had to have this
24 surgery in 2006 proves that she continued to be disabled as a child
25 and establishes that she is a disabled adult. Reply at 14, 16-18.
26 However, a required surgery does not automatically establish
27 disability. Here, Plaintiff's doctors had long anticipated the need
28 for this operation, and none of them opined or implied that the

pending surgery would disable Plaintiff or otherwise prevent her from working.  See AR at 331 (Dr. Maginot's 1999 statement that the time at which Plaintiff will need the valve replaced "cannot be determined exactly"); id. at 467 (Dr. Perry's 2004 statement that Plaintiff will not need valve replacement for "many, many years," maybe when Plaintiff was "well into her 30's").  The ALJ considered these statements when making his decision, and found that "while the evidence does indicate that the claimant will require surgery [to replace her valve] some time in the future causing justifiable concern for the claimant, the need for surgery in the future does not mean that her ability to work is currently restricted."  Id. at 107.

Moreover, Plaintiff's surgeon, Dr. Plunkett, did not opine that either the surgery or the need for the surgery limited Plaintiff's ability to work or her ability to engage in other activities.  Furthermore, six months before the operation, Dr. Child stated that Plaintiff "is doing very well and denies cardiac symptometology [sic], specifically no palpitations, dizziness or syncope.  She ... is not limited in her ability to climb stairs, bicycle around the city, and walk long distances to class."  Id. at 45.

Although Dr. Plunkett's reports indicate that Plaintiff was at significant risk of danger, a risk of which the ALJ was unaware, they also state that replacement of Plaintiff's heart valve would prevent that danger.  Id. at 42 & 50.  Now that the surgery has been performed, the risk of aortic rupture or dissection to which Dr. Plunkett referred is no longer present.  Id. at 42 & 50; see also id. at 32 (Dr. Siecke's statement that Plaintiff's replacement heart

1    valve is "well seated with normal [] motion").  Dr. Plunkett's pre-

2    surgery risk assessments are thus moot, and Plaintiff's reliance on

3    these statements is therefore unconvincing.[8]  The question of whether

4    Dr. Plunkett is, as Plaintiff argues, a "treating surgeon" (Reply at

5    18) is therefore moot as well.

6         Additionally, the Appeals Council considered Plaintiff's new

7    evidence, including the statements of Drs. Plunkett and Child, and

8    upheld the ALJ's denials of benefits.  AR at 77 ("While there is new

9    evidence concerning the claimant's cardiovascular condition ... this

10   evidence does not present persuasive reasons to find significant

11   limitations for the period up to May 2004, when she attained age

12   18).  For the reasons already stated, this Court agrees with the

13   Appeals Council, and does not believe that the AJL's holdings should

14   be disturbed.

15        Furthermore, Plaintiff requests the district court to reverse

16   the ALJ and award her childhood and adult SSI benefits.  Reply at

17   24.  She explicitly states that she does not seek remand.  Id.  An

18   award of benefits without remand is only appropriate when "it is

19   clear from the record that the ALJ would be required to find the

20   claimant disabled if he considered the claimant's evidence."

21

22            [8] Though Plaintiff does not make this argument, the Court notes that
     Plaintiff is not entitled to disability benefits for the period between Dr.
23   Plunkett's statement that Plaintiff needed surgery, and the time the surgery was
     performed.  A "disability" is an "inability to engage in any substantial gainful
24   activity by reason of any medically determinable physical or mental impairment
     which can be expected to result in death or which has lasted or can be expected
     to last for a continuous period  of not less than 12 months ... " 42 U.S.C.S.
25   § 1382c(a)(3)(A).  Dr. Plunkett's statements do not indicate that Plaintiff's
     need for surgery impaired her ability to work.  AR at 38-39, 41-44.  Furthermore,
26   Plaintiff attended college around this time, and was "not limited in her ability
     to climb stairs, bicycle around the city, and walk long distances to class." Id.
27   at 45 (February 2006 report by Dr. Child); see also Matthews, 10 F.3d 678, 680
     (9th Cir. 1993) (claimant's ability to attend classes three times a week is "an
28   activity which is inconsistent with an alleged inability to perform all work").

1  <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002)

2  (questioning whether award without remand appropriate when Appeals

3  Council stated that newly-submitted evidence was "not material;"

4  other elements of test omitted) (citing <u>Smolen v. Chater</u>, 80 F.3d

5  1273, 1292 (9th Cir. 1996)).

6       Neither Dr. Plunkett's reports nor the record as a whole

7  demonstrate that, had the ALJ seen Dr. Plunkett's reports, he would

8  have been "required" to find Plaintiff disabled.  To the contrary,

9  Dr. Plunkett's reports and other newly-acquired evidence show that

10 Plaintiff is no longer in danger of aortic rupture or dissection.

11 AR at 32, 38-39, 41-44.  Plaintiff's arguments that she is entitled

12 to summary judgment on these grounds are therefore unavailing.  The

13 Court is not persuaded that "the ALJ would be required to find the

14 claimant disabled [had] he considered the claimant's evidence,"

15 <u>McCartey</u>, 298 F.3d at 1076-77, and remand is therefore not

16 appropriate on these grounds.

17                b.   <u>Plaintiff's 2006 Episode of Cardiac Arrhythmia</u>

18       Plaintiff states that she suffered an episode of tachycardia

19 on July 21, 2006, and argues that, in combination with previous

20 episodes of tachycarida, she is thus disabled by "recurring

21 arrhythmia."  Reply at 18-19; <u>see</u> <u>also</u> <u>id.</u> at 22, 24.  Therefore,

22 she argues, she is entitled to an award of benefits and reversal of

23 the ALJ without remand.  <u>Id.</u> at 18-19, 22 (describing arrhythmia),

24 24 (requesting award of benefits and reversal).  Because this

25 arrhythmic episode occurred after the 2005 administrative hearing,

26 the ALJ did not consider the event when finding Plaintiff not

27 disabled; the Appeals Council, however, did and found that it did

28 not compromise the ALJ's decision.  AR at 73-80.

1          Plaintiff's argument is not persuasive.  For an adult
2   claimant to be "disabled" by tachycardia, the tachycardia must be
3   "recurrent," such that "within a consecutive 12-month period, the
4   finding(s) occurs at least three times."  Disability Evaluation
5   §§ 4.05 (describing requirements for disabling
6   tachycardia); 4.00(A)(3)(c) (defining "recurrent").  As described
7   *supra*, in 1997, Dr. Perry stated that Plaintiff had "rare" episodes
8   of tachycardia, "perhaps once per year."  AR at 306. Subsequently,
9   Dr. Perry performed a surgical procedure with "excellent results,"
10  thereby resolving the problem.  Id. at 304; see also id. at 465 (Dr.
11  Perry's 2004 statement that Plaintiff "has not had any recurrent
12  arrhythmia since her ablation in 1997"); id. at 332 (Dr. Maginot's
13  1999 diagnosis that recurrence of tachycardia is "unlikely").

14      Although the ALJ was not privy to the 2006 episode of
15  tachycardia, the previous episode occurred in 1997.   Id. at 304.
16  Two documented episodes of tachycardia within nine years do not meet
17  the SSA's definition of "persistent" (three episodes within one
18  year), and Plaintiff's arguments to the contrary are not persuasive.

19  **B.     The SSA Did Not Appear to Lie About Plaintiff's Absence at**
20          **the 1998 Consultive Examination**

21      Plaintiff contends that the SSA lied when it stated in 1999
22  that she failed to appear at a 1998 consultive medical examination
23  with SSA doctors.  Pl. Mot. at 1-2; Reply at 5.  She does not,
24  however, explain why this alleged fabrication leads to the
25  conclusion that the ALJ erred in denying her benefits.  Nonetheless,
26  this Court addresses the argument.

27      Plaintiff's only proof that she attended the consultive
28  examination is a letter from the SSA informing her of the

1  appointment.  Pl. Mot. at 1-2 (citing AR at 1036-38).  This document

2  merely  shows  that  an  appointment  was  scheduled,  not  that  she

3  appeared at the exam.

4       Furthermore, although the failure to appear was cited as one

5  reason among several for the 1999 denial of childhood benefits (AR

6  at 117), Plaintiff's parents subsequently met with an SSA officer to

7  discuss the confusion regarding Plaintiff's failure to appear.  <u>Id.</u>

8  at 128-30.  After this meeting, the SSA gave Plaintiff another

9  opportunity to file for reconsideration of the denial of benefits,

10  and, upon such filing, extended her benefits until 2003.      <u>Id.</u>

11  Therefore, not only does Plaintiff fail to show that the SSA "lied"

12  by stating that she failed to appear at the appointment, the

13  extension of benefits shows that, even if SSA thought Plaintiff

14  failed to appear, it negated the issue.  Moreover, there is no

15  evidence that this alleged failure to appear affected in any way the

16  ALJ's decisions currently under review.  Plaintiff's argument is

17  thus unpersuasive.

18                          <u>**CONCLUSION**</u>

19       For the foregoing reasons, this Court finds that the ALJ's

20  conclusion that Plaintiff is not entitled to either adult or

21  childhood disability benefits is supported by substantial evidence

22  and free from legal error.[9]

23       In light of these findings, **IT IS HEREBY RECOMMENDED** that the

24

25  _____

26       [9] Although Plaintiff makes additional arguments concerning alleged violations of the U.S. Constitution and federal civil rights statutes (Pl. Mot.; Reply), Judge Moskowitz dismissed these claims in his order granting in part and denying in part Defendant's motion to dismiss (Doc. No. 22).  As stated in that order, Plaintiff's only surviving claims are those arising under 42 U.S.C. § 405(g) for review of the Commissioner's decisions.  Doc. No. 22; 42 U.S.C. § 405(g) (defining scope of federal review).  This Court thus limits its conclusions to those claims.

1   District Court issue an Order **DENYING** Plaintiff's motion for summary

2   judgment and **GRANTING** Defendant's cross-motion for summary judgment.

3        **IT IS ORDERED** that any written objections to this Report must

4   be filed with the Court and served on all parties **no later than**

5   **August 15, 2008**.   The document should be captioned "Objections to

6   Report and Recommendation."

7        **IT IS FURTHER ORDERED** that any reply to the objections shall

8   be filed with the Court and served on all parties  **no later than**

9   **September 5, 2008**.   The parties are advised that failure to file

10  objections within the specified time may waive the right to raise

11  those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>,

12  951 F.2d 1153 (9th Cir. 1991).

13       **IT IS SO ORDERED.**

14

15  DATED:  <u>July 25, 2008</u>

16

17                                BARBARA L. MAJOR
                                  United States Magistrate Judge
18

19

20

21  COPY TO:

22  HONORABLE JANIS L. SAMMARTINO
    U.S. DISTRICT JUDGE
23
    ALL COUNSEL AND UNREPRESENTED PARTIES
24

25

26

27

28